IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRANE HEALTHCARE CO. and LAURELWOOD CARE CENTER, LLC, | )<br>)   No.: 2:23-cv-01199-RJC<br>) |
| Plaintiffs, | )<br>)<br>)   Judge Robert J. Colville |
| v. | )<br>) |
| MAXIM HEALTHCARE SERVICES, INC. d/b/a Maxim Staffing Solutions and MAXIM HEALTHCARE STAFFING SERVICES, INC. d/b/a Maxim Healthcare Services, | )<br>)<br>)<br>) |
| Defendants. | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

    Before the Court is a Motion to Dismiss (ECF No. 14) the Amended Complaint (ECF No. 10) filed by Defendants, Maxim Healthcare Services, Inc. d/b/a Maxim Staffing Solutions and Maxim Healthcare Staffing Services, Inc., d/b/a Maxim Healthcare Services. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a). The Motion has been fully briefed and is ripe for disposition.

    **I.**    **Factual Background & Procedural History**

    In the Amended Complaint, Plaintiffs set forth the following factual allegations relevant to the Court's consideration of the Motion at issue:

    Plaintiff, Laurelwood Care Center, LLC, is a skilled nursing center managed by Plaintiff, Grane Healthcare Co. Am. Compl. ¶¶ 12-13. Defendant, "Maxim Staffing is a supplemental staffing agency that employs licensed health care personnel to staff skilled nursing facilities" and Defendant, Maxim Services "holds a controlling interest in Maxim Staffing." *Id.* at ¶¶14-15.

1

On July 23, 2019, Grane and Maxim Services entered into a Master Service Agreement ("MSA") under which Maxim Services was to provide staffing to Grane's skilled nursing facility. *Id.* at ¶ 16. Under the MSA, Maxim Services was to provide "health care personnel including LPNs, LVNs, RN Supervisors, CNAs, and PCA/Sitters to Grane facilities" upon request of Grane. *Id.* at ¶ 17. The MSA set forth specific rates for each of these positions and, pursuant to Section 5.1 of the MSA, "Maxim Services was responsible for accurately invoicing Grane at the applicable rates" each week. *Id.* at ¶¶ 18-19.

"On November 16, 2020, Grane d/b/a Laurelwood and Maxim Staffing executed a COVID-19 Addendum" to the MSA for the purpose of adding COVID-19 rates for support personnel who would treat COVID positive residents at Laurelwood. *Id.* at ¶ 20-21. Section 1.1 of the COVID Addendum stated that the Amendment would remain in effect for the duration of the "Red Zone" activation or until Grane d/b/a Laurelwood did not require Maxim staff to work in the Red Zone. *Id.* at ¶ 22. Section 1.3 of the COVID Addendum established the rates ("Red Zone Rates") for staffing personnel treating COVID positive patients. *Id.* at ¶ 23. Then, on April 26, 2021, Grane and Maxim Staffing executed an additional amendment ("Agreement Amendment") which set new standard rates for health care personnel not working in the Red Zone. *Id.* at ¶ 25.

Grane had eleven patients at Laurelwood test positive for COVID-19 in 2021. *Id.* at ¶ 26. Therefore, the Red Zone Rates applied when Maxim Staffing personnel were treating these patients during the fourteen-day window following the patient testing positive for COVID-19. *Id.* at ¶ 28-29. Plaintiffs allege that Defendants violated the MSA, Covid Addendum, and the Agreement Amendment by billing and invoicing Plaintiffs for the Red Zone Rates for all personnel during the entirety of 2021. *Id.* at ¶ 30. Plaintiffs paid these inflated rates and allege that it was a mistake to remit payment based on the invoices submitted. *Id.* at ¶¶ 31-32. Plaintiffs therefore

allege that they overpaid approximately $219,033.86 to Defendants based on the incorrect invoices. *Id.* at ¶ 33.

Based on these allegations, Plaintiffs bring claims for breach of contract against Maxim Services (Count I), breach of contract against Maxim Staffing (Count II), unjust enrichment against Maxim Services (Count III), unjust enrichment against Maxim Staffing (Count IV), fraud against Maxim Services and Maxim Staffing (Count V), and civil conspiracy against Maxim Services and Maxim Staffing (Count VI).

On August 14, 2023 Defendants filed their Motion to Dismiss (ECF No. 14), along with their Brief in Support (ECF No. 14). Plaintiff filed a Brief in Opposition (ECF No. 15) on September 5, 2023. Defendant filed a Reply (ECF No. 16) on September 12, 2023.

## II.  Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675.  Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)).  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).  When a document integral to or relied upon in the complaint is included, the court may also

consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. Discussion

Defendants seek dismissal of all Counts of Plaintiffs' Amended Complaint.

### A. Voluntary Payment Rule

Defendants first assert that all of Plaintiffs' claims are barred by the Voluntary Payment Rule. Br. in Supp. 1. "The Voluntary Payment Rule is a common law doctrine that precludes actions from being brought to recover money that was voluntarily paid." *Lawn v. Enhanced Service Billing, Inc.*, Civil Action No. 10-cv-1196, 2010 WL 2773377, at *2 (E.D. Pa. July 13, 2010). "Under the voluntary payment doctrine, [w]here . . . one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered." *Williams v. Enterprise Holdings, Inc.*, Civil Action No. 12-05531, 2013 WL 1158508, at *2 (E.D. Pa. March 20, 2013) (internal citations omitted). However, "if one chose to pay without full knowledge of the facts, or because of the other party's fraud, or under some type of duress, then the voluntary payment doctrine does not apply." *Id.* (quoting *Abrevaya v. VW Credit Leasing, Ltd.*, No. Civ. A. 09-521, 2009 WL 8466868, at *2 (E.D. Pa. July 22, 2009)).

Defendants argue that Plaintiffs have failed to adequately plead that they were mistaken in the payment of the invoices at issue and therefore, no exception to the Voluntary Payment Rule applies. Br. in Supp. 6-7. Plaintiffs argue that they mistakenly paid the invoices because they "had no reason to question the fraudulently inflated invoice amounts upon receipt." Resp. 6. Additionally, Plaintiffs allege that there are questions of fact and therefore, dismissal at this stage would be premature. *Id.*

5

Despite Defendants' contentions, Plaintiffs have clearly alleged that their payment was a mistake due to Defendants' deceptive billing practices. Am Compl. ¶¶ 32, 62. Therefore, at this stage in the proceedings, the scope of Plaintiffs' knowledge concerning the invoices at issue is unclear, and the Amended Complaint does not provide the Court with a sufficient factual record to decide the viability of Defendants' affirmative defense. Therefore, it would be premature for the Court to decide at this stage whether Defendants' affirmative defense applies, and Defendants' Motion brought on the ground that Plaintiffs' claims are barred by the Voluntary Payment Rule is denied, without prejudice. *See Lawn*, 2010 WL 2773377, at *2; *McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343, 354 (W.D Pa. 2021).

### B. Fraud

Next, Defendants argue that Plaintiffs have failed to state a cause of action for fraud. Br. in Supp. 8. Under Pennsylvania law, a fraud claim consists of the following six elements: (1) a misrepresentation or a concealment; (2) which is material to the transaction at hand; (3) made with knowledge of its falsity or recklessness as to whether it is true or false (for a misrepresentation) or calculated to deceive (for a concealment); (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) a resulting injury proximately caused by such reliance. *SodexoMAGIC, LLC v. Drexel University*, 24 F.4th 183, 205 (3d Cir. 2022).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The United States Court of Appeals for the Third Circuit has explained:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir. 2004). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

6

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Defendants argue that Plaintiff have not met the heightened pleadings standard because "Plaintiffs offer nothing more than blanket assertions regarding the alleged actions of the [D]efendants, without actually alleging that such actions constituted fraud or that such actions caused harm to Plaintiffs." Br. in Supp. 9.  Additionally, Defendants argue that Plaintiffs have not alleged that the submission of invoices voluntarily paid amounts to fraud or that Defendants took any action for an improper purpose or with a wrongful motive.  *Id.*  Lastly, Defendants argue that Plaintiffs' allegations are contradictory because Plaintiffs have alleged that some patients tested positive for COVID in 2021 while also allegaing that Defendants could not charge at these Red Zone Rates.  *Id.* at 10.

The Court will begin with Defendants' last argument, that Plaintiffs' allegations are contradictory.  The Court disagrees.  Plaintiffs' allegations make clear that Defendants allegedly billed at the Red Zone Rates for all of 2021 when Plaintiffs only had eleven patients test positive for COVID in 2021.  Am. Compl. ¶¶ 26-30.  The Court does not find these allegations to be contradictory.

The Court now turns to the remainder of Defendants' arguments.  In reviewing the facts as alleged by Plaintiffs, the Court notes that Plaintiffs appear to allege two grounds for fraud.  The first is that, at the time Plaintiffs entered into the MSA, they were improperly led to understand that staffing services would be provided by Maxim Services, when they were actually provided by Maxim Staffing.  Am. Compl. ¶¶ 52-53.  The Court categorizes these allegations as ones for fraud in the inducement.  The second is that Defendants intentionally charged Plaintiffs at the higher staffing rates set forth in the COVID Addendum for all of 2021, even for patients who had not tested positive for COVID.  *Id.* at ¶¶ 60-61.

Based on these allegations, the Court finds that Plaintiffs have sufficiently pled a cause of action for fraud under the heightened pleading standard as to allegations that Defendants fraudulently billed.  Plaintiffs have alleged that Defendants "submitted invoices requesting the 'Red Zone' rates for every month in 2021, even with knowledge that no patients had tested positive for COVID-19 at [the] facility" and that Defendants "intentionally generated invoices each month that fraudulently misrepresented the applicable billing rates for the staff provided."  Am. Compl. ¶¶ 59-60.  Additionally, Plaintiffs have alleged that they paid these inflated rates as a "direct and proximate result" of Defendants' "deceptive billing practices."  *Id.* at ¶ 62.  The Court finds that such allegations are sufficient to state a cause of action for fraud.  *See Prime Energy and Chemical, LLC v. Tucker Arensberg*, No. 2:18-cv-00345, 2019 WL 3778756, at *8 (W.D. Pa. Aug. 12, 2019) (finding that plaintiff's allegations were sufficient to state a cause of action where plaintiff alleged that defendant made a material misrepresentation, and that plaintiff would not have invested had plaintiff known of the misrepresentation).

However, Plaintiffs are also alleging that Defendants fraudulently induced them to enter into the MSA knowing that Maxim Staffing was providing staffing services and not Maxim Services.  While these allegations appear briefly in Plaintiffs' Amended Complaint, Plaintiffs at no time allege that they would not have entered into the MSA, or any future addendums, had they known that Maxim Staffing would be providing the contracted services or that they suffered any specific or discrete harm as a result of Maxim Staffing, rather than Maxim Services, providing the contracted services.  Additionally, Plaintiffs allege that they later entered into the COVID Addendum and Agreement Addendum with Maxim Staffing and acknowledge that Maxim Staffing took over the duties of the MSA, *see* Am. Compl. ¶¶ 54-55, in this regard, it is unclear to the Court what specific theory of fraud, or damages arising from fraud, Plaintiffs are

asserting. Lastly, Plaintiffs have offered almost no arguments in their Response to the Motion to Dismiss that they were induced to enter into the MSA, outside of one sentence. *See* Resp. 3. For these reasons, the Court cannot at this time find that Plaintiffs have pled a valid cause of action for fraud in the inducement because Plaintiffs have not adequately pled the "date, place, or time" of the alleged fraud or provided some "means of injecting precision and some measure of substantiation into their allegations of fraud." *PPG Industries, Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 527 (W.D. Pa. 2011) (internal citations omitted). Therefore, Plaintiffs' claim that Defendants' fraudulently induced Plaintiffs to enter into the MSA is dismissed, without prejudice.

For the reasons stated above, Defendants' Motion to Dismiss Plaintiffs' fraud claim at Count V is denied as to Plaintiffs' allegations of Defendants' deceptive billing practices and is granted, without prejudice, as to Plaintiffs' allegations of fraud in the inducement.

### C. Gist of the Action Doctrine and Economic Loss Rule

Because the Court has found that Plaintiffs have pled a valid cause of action for fraud based on the theory that Defendants fraudulently billed, the Court must now consider Defendants' alternative argument that, even if Plaintiffs validly pled a cause of action for fraud, their fraud claim must still be dismissed under the gist of the action and economic loss doctrines.

The Court will not, however, consider whether the gist of the action and economic loss doctrines apply to Plaintiffs' claim that Defendants fraudulently induced them to enter into the MSA as the Court has dismissed said claim, without prejudice. Defendants may reassert their arguments as to these allegations, if warranted.

9

### a. Gist of the Action Doctrine

The "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). The simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other. *Smith v. Lincoln Benefit Life Co.,* No. 08-1324, 2009 WL 789900, at *20 (W.D. Pa. Mar. 23, 2009), *aff'd*, 395 F. App'x. 821 (3d Cir. 2010).  The doctrine, however, forecloses a party's pursuit of a tort action for the mere breach of contractual duties, "without any separate or independent event giving rise to the tort." *Smith*, 2009 WL 789900, at *20 (quoting *Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp.2d 329, 340 (E.D. Pa. 2003)).

In *Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, No. CV 19-3030, 2020 WL 2494701, at *10 (E.D. Pa. May 14, 2020), the court explained as follows.  Determining whether the gist of the action doctrine applies "call[s] for a fact-intensive judgment as to the true nature of a claim." *Williams v. Hilton Grp., PLC*, 93 F. App'x 384, 386 (3d Cir. 2004); *see also Milo, LLC v. Procaccino,* No. 16-5759, 2020 WL 1853499, at *7 (E.D. Pa. 2020).  "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort ... is not controlling." *Bruno v. Erie*, 630 Pa. 79, 106 A.3d 48, 68 (2014).  Rather, "[t]o evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because 'the nature of the duty alleged to have been breached ... [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.'" *Downs v. Andrews,* 639 F. App'x 816, 819 (3d Cir. 2016) (quoting *Bruno*, 106 A.3d at 68).  "If the facts of

10

a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim should be treated as one for breach of contract." *Bruno*, 106 A.3d at 68. "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id.*

Based on a fair reading of the Amended Complaint, the Court finds that Plaintiffs' fraud claim concerning Defendants' fraudulent billing should be dismissed on the basis of the gist of the action doctrine, with prejudice. The Court is of course mindful that this action is at the motion to dismiss stage and that, for this reason, "[a] court should be cautious when determining that a claim should be dismissed under the gist of the action doctrine." *Partners Coffee Co., LLC,* 2009 WL 4572911, at *4. However, here, Plaintiffs' allegations are that Defendants fraudulently billed for staffing services at a rate inconsistent with the MSA, COVID Addendum, and Agreement Addendum. *See* Am. Compl. ¶¶ 58-62. These allegations make clear that Defendants breached specific duties outlined in the contract at issue and do not concern violations of a broader societal duty.

While Plaintiffs attempt to categorize these allegations as ones for fraud in the inducement, by alleging that Defendants fraudulently induced Plaintiffs to enter into the COVID Addendum in order to bill at a higher rate, *see* Resp. 12, there is no support for this argument in the allegations raised in the Amended Complaint. Instead, the Amended Complaint only alleges that Defendants violated the contract by billing at higher rates in 2021. Am. Compl. ¶¶ 30, 58-62. As such, the gist of the action doctrine applies because Plaintiffs' allegations of fraud only

11

involve allegations of duties breached under the contract and are, therefore, intertwined with the breach of contract claim. For these reasons, Plaintiffs' claim that Defendants fraudulently billed at Count V is dismissed, with prejudice.

### b. Economic Loss Doctrine

The Court now turns to Defendants' argument that Plaintiffs' fraud claim should be dismissed under the economic loss doctrine. The economic loss doctrine, "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). "In other words, '[w]hen loss of the benefit of a bargain is the plaintiff's sole loss, . . . the undesirable consequences of affording a tort remedy in addition to a contract-based recovery [are] sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims.'" *Id.* at 618-19.

Here, as stated above, Plaintiffs' fraud claim is intertwined with the contract claim because the allegations concern only Defendants' duties under the contract. Therefore, for the same reasons as discussed when addressing the gist of the action doctrine, the economic loss doctrine also applies and Plaintiffs' fraud claim at Count V will be dismissed, with prejudice.

### D. Civil Conspiracy

Next, Defendants allege that Plaintiffs have failed to plead a claim for civil conspiracy. Br. in Supp. 12. To state a claim for civil conspiracy, Plaintiffs must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003). "The established rule is that a cause of action for civil conspiracy

requires a separate underlying tort as a predicate for liability." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999).

Defendants argue that Plaintiffs have not adequately pled facts in support of any of these elements. Br. in Supp. 12. Specifically, Defendants argue that Plaintiffs' civil conspiracy claim must be dismissed because Plaintiffs do not have any valid causes of actions against Defendants and that, even if the Court allows Plaintiffs' breach of contract action to continue, a civil conspiracy claim cannot be premised on a breach of contract claim. *Id.* Additionally, Defendants argue that Plaintiffs have not "allege[d] that Defendants acted with a common purpose to harm Plaintiffs" which is a requirement of a civil conspiracy claim. *Id.* Plaintiffs argue that because they have adequately pled causes of action for fraud and unjust enrichment, their civil conspiracy claim is adequately supported by underling claims. Resp. 13.

As stated elsewhere in this opinion, Plaintiffs' causes of action for fraud in the inducement and unjust enrichment are dismissed, without prejudice. Additionally, Plaintiffs' cause of action for fraud based on Defendants' deceptive billing practices is dismissed, with prejudice. Therefore, at this time, Plaintiffs cannot rely on these causes of action as a basis for their civil conspiracy claim. However, because the Court has allowed Plaintiffs to amend some of these claims, it is possible that Plaintiffs may choose to amend their Amended Complaint and assert valid causes of action for fraud in the inducement and unjust enrichment that they may rely upon.

However, to the extent Plaintiffs wish to rely solely on their breach of contract claims as a basis for their civil conspiracy claim, numerous courts have held that a claim for breach of contract cannot predicate a civil conspiracy claim. This is because a civil conspiracy claim must be predicated on an underlying tort claim and a breach of contract claim is not a claim in tort. *See Alpart v. General Land Partners, Inc.*, 574 F. Supp. 2d 491, 506 n.18 (E.D. Pa. 2008) (finding that

a claim for civil conspiracy cannot be based on a breach of contract); *Duckweed, USA, Inc. v. Behrens*, Civil Action No. 15-5387, 2016 WL 1241869, at *5 (E.D. Pa. March 30, 2016) (same); *Germain v. Wisniewski*, Case No. 15-1279, 2016 WL 4158994, at *8 (W.D. Pa. Aug. 5, 2016) (same).  Therefore, the Court agrees with Defendants and joins these courts in finding that a civil conspiracy claim cannot be based solely on a breach of contract.

Additionally, as argued by Defendants, "[p]roof of malice is an essential part of a cause of action for conspiracy, and malice requires that the conspirators act with the sole purpose of injuring the plaintiff." *Sarpolis v. Tereshko*, 625 Fed. App'x 594, 601 (3d Cir. 2016) (internal citations omitted) (cleaned up).  Because malice can only be found when the sole purpose of the conspiracy is to injure the plaintiff, *a showing that a person acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice.  Kretulskie v. Madison Natural Life Insurance Company, Inc.*, Civil No. 3:18-CV-1357, 2019 WL 5866694, at *4 (E.D. Pa. Oct. 9, 2019) (internal citations omitted) (emphasis in original).

Here, even if Plaintiffs had adequately pled a predicate tort claim, Plaintiffs have failed to allege that Defendants acted with malice.  Plaintiffs' allegations clearly assert that Defendants "submitted inaccurate invoices to the Plaintiffs with elevated rates in order to *enrich themselves* at the expense of Plaintiffs."  Am. Compl. ¶ 69 (emphasis added).  Therefore, Plaintiffs have not pled malice because Plaintiffs have alleged that Defendants were motivated by their own self-interest. *See Kretulskie*, 2019 WL 5866694, at *4-5 (finding that plaintiff had not pled malice where plaintiff alleged that defendants had "conspired to wrongfully deny plaintiff's claim for their own wrongful purpose.").  While Plaintiffs may have been injured by Defendants' actions, Plaintiffs have not plead that Defendants were motivated *solely* by the desire to injure Plaintiffs.  As such, Plaintiffs' civil conspiracy claim (Count VI) is also dismissed, without prejudice, for this reason.

### E.  Unjust Enrichment

Lastly, Defendants argue that Plaintiffs unjust enrichment claims should be dismissed because the parties' relationship is governed by a written agreement and because Plaintiffs have failed to allege that they did not receive the services contracted for.  Br. in Supp. 13-14.

To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege (1) that the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances in which it would be inequitable to do so without paying for the benefit.  *Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 628 (Pa. Super. 2019).

In Pennsylvania, "the doctrine of unjust enrichment is inapplicable when the relationship between parties is *founded* upon a written agreement or express contract."  *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 895 A.2d 1250, 1254 (2006) (emphasis added).  Even where a contract would preclude recovery under unjust enrichment, a plaintiff may plead a claim for unjust enrichment in the alternative where "(i) the contract at issue covers only a part of the relationship between the parties, or [where] (ii) the existence of a contract is uncertain or its validity is disputed by the parties."  *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (footnotes omitted) (citations omitted).

While Plaintiffs assert that their unjust enrichment claim is appropriate because the fraud committed by Defendants "was not contemplated in the contract and the services improperly billed for by [Plaintiffs'] w[as] not part of the agreement[,]" Resp. 10, Plaintiffs have failed to allege that there is a dispute as to whether a valid enforceable contract exists.  Instead, here, the parties appear to agree that there exists a valid contract governing their relationship and neither party has alleged that the contract was invalid or unenforceable.  As such, Defendants' Motion to Dismiss as to the

unjust enrichment claims (Counts III and IV) is granted, without prejudice. *See Grudkowski v. Foremost Ins. Co.*, 556 Fed. Appx. 165, 170 (3d Cir. 2014) (holding the district court properly dismissed plaintiff's unjust enrichment claim where a valid contract existed); *see also Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa 2012) (dismissing unjust enrichment claim where there was no dispute that the "contract was valid and enforceable"); *cf. Premier Payments Online, Inc. v. Payment Systems Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) (finding that where the defendant disputed there was a valid contract between the parties, it was improper to dismiss the unjust enrichment claim).

### IV.     Conclusion

For the reasons discussed above, the Court will grant Defendants' Motion to Dismiss, with prejudice, as to Plaintiffs' claim that Defendants fraudulently billed in Count V.  The Court will grant Defendants' Motion to Dismiss, without prejudice, as to Counts III, IV, VI, and Plaintiff's claim of fraudulent inducement in Count V.  The Court will deny Defendants' Motion to Dismiss as to Counts I and II.   An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 7, 2024

cc: All counsel of record